NO. 12-05-00139-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS

§APPEAL FROM THE 

THE STATE OF TEXAS FOR
THE BEST INTEREST                                    §     COUNTY COURT AT LAW OF
AND PROTECTION OF K.H.

§CHEROKEE COUNTY, TEXAS 




MEMORANDUM OPINION
            K.H. appeals the trial court’s order for temporary inpatient mental health services. K.H.
raises one issue on appeal. We affirm.
Background
            On April 3, 2005, an application was filed for court-ordered temporary mental health services
with regard to K.H. On April 19, 2005, an evidentiary hearing was conducted on the matter. At the
hearing, K.H. stipulated to the qualifications of the testifying doctors as experts in the field of mental
health care. K.H. further stipulated that the medical records, physician’s certificates, and
recommendations of the treatment teams of Rusk State Hospital were business records, subject to
other objections.
            Dr. Victoria Morgan’s certificate reflects that she examined K.H. on April 5, 2005, and that,
during the examination, K.H. expressed delusions about his identity in that he believed he was
Michael Jordan or Shaq. Morgan further states in her certificate that K.H. expressed a desire to live
in New York and has no insight into his mental illness symptoms or his need for treatment. Morgan
further noted that K.H. made threats to harm police who may bring him to the hospital and that he
was very irritable and angry. Morgan also noted that K.H. has multiple delusions and that he may
act based on such psychotic ideas. Based upon Morgan’s examination of K.H., she diagnosed him
as suffering from schizoaffective disorder. Doctor Sethurama Srinivasan’s certificate stated that he
examined K.H. on April 15, 2005 and that his diagnosis of K.H.’s condition was likewise
schizoaffective disorder. Srinivasan also notes that K.H. is euphoric, somewhat hyperactive, and
paranoid. Srinivasan states that K.H. had been aggressive prior to his admission to the hospital.
            The trial court admitted the certificates into evidence, and the State called Morgan to testify
about K.H.’s mental health. Morgan stated that she had examined K.H. and had found him to be
suffering from a mental illness, schizoaffective disorder. Morgan continued, stating that K.H., as
a result of his disorder, is suffering from severe and abnormal mental and physical distress and is
unable to make a rational and informed decision as to whether or not to submit to treatment. Morgan
testified that the underlying factual basis for her opinion is that K.H. suffers from diabetes, but does
not believe that he has diabetes. Morgan further testified that K.H. has, on several occasions, refused
to let the hospital nurse monitor his blood sugar level, and, although he, in many instances, required
insulin, K.H. has resisted the appropriate treatment for his diabetes. Morgan also stated that K.H.
expressed to him his belief that he is a variety of sports personalities such as Barry Sanders, Michael
Jordan, and Shaquille O’Neal, rather than K.H., who has diabetes and requires treatment. Morgan
also testified that if K.H. were to be released, he would not be able to go out into the world and take
care of his blood monitoring or take his insulin as required. Morgan related that if K.H. failed to
take his insulin, his blood sugar could become dangerously high, which could lead to complications
such as coma, diabetic coma, or death. Morgan stated that Rusk State Hospital was the least
restrictive option available to K.H. at that time and that the estimated timeline for K.H.’s treatment
was an additional sixty days or less.
            On voir dire, Morgan testified that within approximately one month of the hearing, K.H. had
been showing signs of improvement and Morgan and others began discussing the possibility of his
discharge, but that K.H. became angry. According to Morgan, K.H. said that every time he goes
home, the police end up bringing him back to the hospital and that next time, he would shoot them
if they came on his property.
            On cross-examination, Morgan testified that K.H. did not require assistance feeding himself, 
clothing himself, or attending to his personal hygiene. Morgan further stated that while K.H. did not
fully understand the dangers inherent with the outside world, he would probably understand the
danger involved with standing on a fire ant hill or the danger involved with fire.
            K.H. testified on his own behalf at the hearing. K.H. stated that he wanted to leave the
hospital and go to Michigan to attend the University of Michigan where he had enrolled and planned
to study sports medicine. K.H. further stated that he did not need help buying groceries or cooking
meals, that if he had a broken arm, he could have it repaired by a college physician, that if his
dormitory room was on fire, he would evacuate, and that it is not safe to stand in the middle of a
busy highway. K.H. testified that he does not believe he has diabetes because he had no
understanding about having sugar and was too young to understand what sugar is.
            The trial court granted the application and found K.H. to be mentally ill and that as a result
of mental illness, K.H. was either (1) likely to cause serious harm to others, or (2) is (a) suffering
severe and abnormal mental, emotional, or physical distress, (b) is experiencing substantial mental
or physical deterioration of his inability to function independently, which is exhibited by his inability
to provide for his basic needs, including food, clothing, health, or safety, and (c) is unable to make
a rational and informed decision as to whether or not to submit to treatment. This appeal followed.

Burden of Proof and Standard of Review 
            In his sole issue, K.H. challenges the legal and factual sufficiency of the evidence supporting
the trial court’s order. Section 574.034 of the Texas Health and Safety Code contains the criteria
for court-ordered temporary inpatient mental health services. The court may order a proposed patient
to receive temporary inpatient mental health services only if the factfinder concludes from clear and
convincing evidence that the proposed patient is mentally ill and also meets at least one of the
additional criteria set forth in section 574.034(a)(2). Specifically, subsection (a)(2) provides that the
factfinder must conclude that as a result of mental illness, the proposed patient
 
              (A)        is likely to cause harm to himself;
 
              (B)         is likely to cause serious harm to others; or
 
              (C)         is:
 
                            (i)          suffering severe and abnormal mental, emotional, or physical
distress;
 
                            (ii)         experiencing substantial mental or physical deterioration of the
proposed patient’s ability to function independently, which is
exhibited by the proposed patient’s inability, except for reasons
of indigence, to provide for the proposed patient’s basic needs,
including food, clothing, health, or safety; and
 
                            (iii)        unable to make a rational and informed decision as to whether or
not to submit to treatment.
 
Tex. Health & Safety Code Ann. § 574.034(a)(2) (Vernon Supp. 2004–05).
            The State has the burden of establishing by clear and convincing evidence that the proposed
patient meets at least one of the additional criteria listed in section 574.034(a)(2). Mezick v. State,
920 S.W.2d 427, 430 (Tex. App.–Houston [1st Dist.] 1996, no writ). “Clear and convincing
evidence” is an intermediate standard, falling between the preponderance of the evidence standard
of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. State v.
Addington, 588 S.W.2d 569, 570 (Tex. 1979). The Texas Supreme Court has defined “clear and
convincing evidence” as “that degree of proof which will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be established.” Id. When court-ordered temporary mental health services are sought, an additional requirement for clear and
convincing evidence is imposed. To be clear and convincing under subsection (a), the evidence must
include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern
of behavior that tends to confirm
 
(1)         the likelihood of serious harm to the proposed patient or others; or
 
(2)the proposed patient’s distress and the deterioration of the proposed patient’s 
                            ability to function.
 
Tex. Health & Safety Code Ann. § 574.034(d) (Vernon Supp. 2004–05).  
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do
so. Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or
found to have been incredible. Id.
            In addressing a factual sufficiency of the evidence challenge, we must consider all the
evidence in the record, both that in support of and contrary to the trial court's findings. In re C.H.,
89 S.W.3d 17, 27-29 (Tex.2002). This court must give due consideration to evidence that the
factfinder could reasonably have found to be clear and convincing. Id. at 25. We must determine
whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State's allegations. Id. We must consider whether disputed evidence is such that a
reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. In
re J.F.C., 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the
factfinder. In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of
the witnesses and the weight to be given their testimony. See id. at 27; In re J.J.O., 131 S.W.3d 618,
632 (Tex. App.– Fort Worth 2004, no pet.).
 
Legal Sufficiency of the Evidence
            The evidentiary standards for involuntary commitment are high. Harris v. State, 615 S.W.2d
330, 333 (Tex. Civ. App.– Fort Worth 1981, writ ref’d n.r.e.). The State must produce expert
testimony to support its contention that involuntary commitment is necessary. Tex. Health &
Safety Code Ann. § 574.034(d). However, an expert diagnosis, without more, is not sufficient to
confine a patient for compulsory treatment. Mezick, 920 S.W.2d at 430. The State cannot meet its
burden of proof without presenting evidence of the behavior of the proposed patient that provides
the factual basis for the expert opinion. Id. To be clear and convincing, the evidence must show a
recent overt act or a continuing pattern of behavior that tends to confirm the likelihood that the
patient will seriously harm himself or others or that his ability to function is deteriorating because
of his distress. Tex. Health & Safety Code Ann. § 574.034(d). The recent overt act or
continuing pattern of behavior shown by the State must also relate to the criterion on which the
judgment is based. See T.G. v. State, 7 S.W.3d 248, 252 (Tex. App.– Dallas 1999, no pet.); In re
Breeden, 4 S.W.3d at 788. 
            In the case at hand, the trial court found that K.H. was mentally ill and as a result of that
mental illness (1) is likely to cause serious harm to others or (2) is (a) suffering severe and abnormal
mental, emotional, or physical distress, (b) is experiencing substantial mental or physical
deterioration of his inability to function independently, which is exhibited by his inability to provide
for his basic needs, including food, clothing, health, or safety, and (c) is unable to make a rational
and informed decision as to whether or not to submit to treatment. See Tex. Health & Safety
Code Ann. § 574.034(a).
            The State’s only witness, Dr. Morgan, concluded that K.H. was suffering from a mental
illness, schizoaffective disorder. Morgan continued, stating that K.H., as a result of his disorder, is
suffering from severe and abnormal mental and physical distress and is unable to make a rational and
informed decision as to whether or not to submit to treatment. Morgan based her opinions on the
fact that K.H. refused to acknowledge that he had diabetes. Morgan further noted as an underlying
factual basis for her opinion that, on several occasions, K.H. refused to let the hospital nurse monitor
his blood sugar level, and, although he, in many instances, required insulin, K.H. had resisted the
appropriate treatment for his diabetes. Morgan also testified that K.H. expressed to her his belief
that he is a variety of sports personalities such as Barry Sanders, Michael Jordan, and Shaquille
O’Neal, not that he is K.H., who has diabetes and requires treatment. Morgan also stated that if K.H.
were to be released, he would not be able to go out into the world and take care of his blood
monitoring or take his insulin as required. Morgan related that if K.H. failed to take his insulin, his
blood sugar could become dangerously high, which could lead to complications such as coma,
diabetic coma, or death. Moreover, during his testimony to the court, K.H. stated that he does not
believe he has diabetes because he had no understanding about having sugar and was too young to
understand what sugar is.
            The foregoing evidence supports the trial court’s finding that K.H. was mentally ill and as
a result of that mental illness is suffering severe and abnormal mental or physical distress, is
experiencing substantial mental or physical deterioration of his inability to function independently,
which is exhibited by his inability to provide for his basic needs, including food, clothing, health,
or safety, and is unable to make a rational and informed decision as to whether or not to submit to
treatment. We note that evidence of several instances of K.H.’s refusal to accept treatment for his
diabetes, a condition he will not acknowledge that he has because he is too young to understand what
sugar is, coupled with Morgan’s testimony concerning what could occur if K.H. failed to take his
insulin satisfies the requirement of evidence of a continuing pattern of behavior showing K.H.’s
distress and the deterioration of his ability to function. 
            To meet the evidentiary standard for a temporary commitment, the evidence offered at the
hearing must show that hospitalization is necessary for the protection and welfare of the proposed
patient or the protection of others. State of Texas for the Best Interest and Protection of C.O., 65
S.W.3d 175, 182 (Tex. App.– Tyler 2001, no pet.). Though there is no evidence of an intent or an
intentional act by K.H. to hurt himself, there is ample evidence of a continuing pattern of behavior
on K.H.’s part that is capable of producing in the mind of the factfinder a firm belief that K.H.’s
ability to function was deteriorating because of his mental distress. Therefore, K.H.’s first issue, as
it relates to the legal sufficiency of the evidence, is overruled.

Factual Sufficiency of the Evidence
            K.H. will prevail in his challenge to the factual sufficiency of the evidence if we find that,
after taking all of the evidence into account, the evidence is insufficient to produce in the mind of
the factfinder a firm belief or conviction as to the truth of the facts. See In re C.H., 89 S.W.3d at
25.
            The evidence contrary to the trial court’s findings was presented during the cross-examination of Morgan. On cross-examination, Morgan testified that K.H. did not require assistance
feeding himself, clothing himself, or with his personal hygiene. Morgan further stated that while
K.H. did not fully understand the dangers inherent with the outside world, he would probably
understand the danger involved with standing on a fire ant hill and that he understands that fire is
dangerous.
            In his testimony to the court, K.H. stated that he wanted to leave the hospital and go to
Michigan to attend the University of Michigan where he had enrolled and planned to study sports
medicine. K.H. further stated that he did not need help buying groceries or cooking meals, that if
he had a broken arm, he could have it repaired by a college physician, that if his dormitory room was
on fire, he would evacuate, and that it is not safe to stand in the middle of a busy highway. 
            After reviewing all of the evidence, both in support of and contrary to the trial court’s
findings, we hold that the trial court could have reasonably found that K.H. had a continuing pattern
of behavior that demonstrated his mental distress and deterioration of independent functioning. 
Although Morgan testified that K.H. could feed himself, clothe himself, and use proper personal
hygiene, neither such evidence nor K.H.’s testimony renders the remaining evidence insufficient to
produce in the mind of the trial court a firm belief that K.H.’s pattern of behavior was the type of
pattern necessary to support a temporary commitment under Section 574.034(a)(2)(C). Therefore,
the remainder of K.H.’s first issue, as it relates to the factual sufficiency of the evidence, is
overruled.



Disposition
Having overruled K.H.’s sole issue, we affirm the trial court’s judgment.

                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice


Opinion delivered September 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.





















(PUBLISH)