NUMBER 13-04-00423-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

                                                                                                                       


M. R.,                                                                                                  Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

                                                                                                                      


       On appeal from the Probate Court of Hidalgo County,
Texas.

                                                                                                                       


                       MEMORANDUM OPINION

 

               Before Justices Hinojosa,
Rodriguez, and Garza

                         Memorandum
Opinion by Justice Hinojosa

 

Appellant, M. R., appeals from the probate court=s judgment temporarily committing him to the Rio
Grande State Center (Athe Center@), a mental health facility, for ninety
days.  In his sole issue, M. R. claims
the evidence is legally insufficient to support the court=s finding that he needed temporary mental
health services.  We affirm.[1]








                                                   A.  Factual
Background

The probate court held an evidentiary
hearing to determine whether appellant should be temporarily committed.  The following three witnesses testified at
the hearing:  (1) Dr. Diego Rodriguez, a
psychiatrist at the Center, (2) appellant, and (3) appellant=s mother, G. R.

                                                         1.  Dr. Diego Rodriguez

Dr. Rodriguez testified that appellant
suffered from schizophrenia disorganized. 
He interviewed appellant on one occasion, reviewed appellant=s medical records from a previous doctor,
and met with nurses and other staff members who had regular contact with
appellant during his detention in the Center.

Dr. Rodriguez related what Dr. Weathers, the
doctor who initially interviewed appellant prior to his commitment, found.  Dr. Weather=s records showed that appellant:  (1) had called his mother the devil, and his
mother had to lock herself in a closet; (2) had rambled incoherently when
speaking with Dr. Weathers; (3) had cigarette burns on his arms; (4) had broken
into a neighbor=s house and car; and (5) after locking
himself in the neighbor=s car, was unable to get out.








Dr. Rodriguez testified that appellant had
attempted to escape from the Center.  Dr.
Rodriguez found that appellant (1) was at a substantial risk of causing serious
harm to himself or others if not treated, (2) suffered from severe and abnormal
mental, emotional and physical distress, (3) would not be able to function
independently if he was released from the Center, (4) suffered from hallucinations, and (5)
could not make a rational and informed decision about whether to submit to
treatment.

                                                                   2.  Appellant

Immediately following Dr. Rodriguez=s testimony, appellant testified on his own
behalf.  Appellant said he did not know
why he was placed in the mental health facility.  He admitted to breaking into the neighbor=s home, but said he broke the window Ato wake them up . . . because they were
sleeping.@ 
Appellant admitted he had burned himself A[j]ust to see if it hurts.@  He
also displayed several burn marks on his forearm to the court.  Appellant also admitted he had previously cut
his wrists with a razor blade to Asee if it would hurt.@  

                                                           3.  Appellant=s Mother

Appellant=s mother, testified that she had filed the
application for emergency detention and apprehension of appellant because he
had not slept in five or six days and would talk to himself.  Appellant=s mother was Aafraid for [appellant].@  She
testified that prior to his detention, appellant Awas like hallucinating and he said that
[she] was a demon.@ 
Appellant=s mother also testified that in November
2003, appellant had written a letter saying he wanted to kill himself.

                                                     4.  Probate Court=s Findings

After hearing the testimony of these three
witnesses, the probate court found that appellant was not currently a danger to
himself or others but that appellant Ameets the deterioration standard.@  See
Tex. Health & Safety Code Ann.
' 574.034(a)(2)(C) (Vernon 2003).

                                                     B.  Standard
of Review








In a legal sufficiency review where the
burden of proof is clear and convincing evidence, we must look at all the
evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its
findings were true.  See In the
Interest of J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).  We must assume that the fact finder settled
disputed facts in favor of its finding if a reasonable fact finder could do so
and disregard all evidence that a reasonable fact finder could have disbelieved
or found incredible.  See id.  This does not mean that we are required to
ignore all evidence not supporting the finding because that might bias a clear
and convincing analysis.  See id.

                                                          C.  Applicable
Law

Under Texas law, a trial court can order
temporary in‑patient mental health services if the court finds from clear
and convincing evidence that the proposed patient is:

(1)       mentally ill; and

 

(2)       as a result of that mental illness the
proposed patient:

 

(A)       is likely to cause serious harm to
himself;

 

(B)       is likely to cause serious harm to
others; or

 

(C)       is:

 

(i)         suffering from severe and abnormal
mental, emotional, or physical distress;

 

(ii)        experiencing substantial mental or
physical deterioration of the proposed patient=s ability to function independently, which
is exhibited by the proposed patient=s inability, except for reasons of
indigence, to provide for the proposed patient=s basic needs, including food, clothing,
health, or safety; and

 

(iii)       unable to make rational and informed
decisions as to whether or not to submit to treatment. 

 








Tex. Health &
Safety Code Ann. ' 574.034(a).

The health and safety code also provides
that to meet the Aclear and convincing@ standard of proof, the evidence must Ainclude expert testimony and, unless waived,
evidence of a recent overt act or a continuing pattern of behavior that tends
to confirm (1) the likelihood of serious harm to the proposed patient or
others, or (2) the proposed patient=s distress and the deterioration of the
proposed patient=s ability to function.@  See
id. ' 574.034(d). 
A medical diagnosis alone is not sufficient to confine a patient for
compulsory treatment.  See Mezick v.
State, 920 S.W.2d 427, 430 (Tex. App.BHouston [1st Dist.] 1996, no writ) (citing Lodge
v. State, 597 S.W.2d 773, 779 (Tex. Civ. App.BSan Antonio), aff=d, 608 S.W.2d 910 (Tex. 1980)).  Expert opinions recommending involuntary
commitment must be supported by a showing of the factual basis on which they
are grounded.  See id. at 430.

                                                                  D.  Analysis

Appellant asserts there is no evidence in
the record of a recent overt act or continuing pattern of behavior that tended
to confirm appellant=s distress and deterioration as required by
statute. See Tex. Health &
Safety Code Ann. ' 574.034(d).[2]   








In L.S. v. State, the Austin Court of
Appeals found a continuing pattern of behavior or a recent overt act.  L.S. v. State, 867 S.W.2d 838, 840-43
(Tex. App.BAustin 1993, no writ).  In L.S., the court wrestled with the
renewal of an order for extended mental health services for a period not to
exceed twelve months.[3]  Id. at 840.  The doctor testified the patient was mentally
retarded and schizophrenic.  Id.
at 842.  The doctor also testified that
if the patient was not treated, he would deteriorate.  Id. 
The doctor then referred to the following three patterns of behavior of
the patient to illustrate the need for hospitalization:  (1) burning his skin with cigarettes; (2)
drinking excessive amounts of water, causing him to gain ten pounds in an eight‑hour
period; and (3) an unauthorized departure from the psychiatric facility for six
days.  Id.  The court found the testimony provided
sufficient evidence of a continuing pattern of behavior or recent overt acts.  Id. at 843.








Similar cases have further explained what
may constitute clear and convincing evidence under section 574.034(d).  See State ex rel L.H., 183
S.W.3d 905, 911‑12 (Tex. App.BTexarkana 2006, no pet. h.) (concluding that
clear and convincing evidence found the proposed patient had previously harmed
herself with a razor and had acquired another razor while in the health service
facility, though she did not harm herself with the second razor); D.M. v.
State, 181 S.W.3d 903, 904-05 (Tex. App.BDallas 2006, no pet. h.) (concluding that
clear and convincing evidence showed proposed patient had put herself into
situations where she was at risk of being assaulted and that she had a previous
suicide attempt); G.H. v. State, 94 S.W.3d 115, 116‑17 (Tex. App.BHouston [14th District] 2002, no pet.)
(concluding that the proposed patient=s refusal to take medication, actions at home
that caused her family to contact a mental health deputy, and her behavior in
an emergency room were all recent overt acts that tended to confirm her
distress and deteriorating ability to function).  ATexas law does not require relatives or
physicians of the mentally ill (or the courts) to stand idly by until serious
harm occurs. . . .  The purpose of
temporary commitment is to avoid just such harm.@  See
G.H. v. State, 94 S.W.3d 115, 117 (Tex. App.BHouston [14th Dist.] 2002, no pet.).

After considering the evidence in the light
most favorable to the probate court=s finding, we conclude the evidence is more
than sufficient to support the court=s conclusion that (1) appellant was likely
to suffer a substantially deteriorated ability to function independently due to
his severe mental distress, and (2) he was unable to take the steps needed to
remedy it.  See Tex. Health & Safety Code Ann. ' 574.034(a)(2)(C).  Further, we conclude the probate court could
have formed a firm belief that its findings were true and justified
commitment.  See In the Interest of
J.F.C., 96 S.W.3d at 266.  
Accordingly, we hold the evidence is legally sufficient to support the
probate court=s order of commitment under section
574.034(a)(2)(C).  See id.  Appellant=s sole issue is overruled.

The judgment of the probate court is
affirmed.

 

FEDERICO G. HINOJOSA

Justice

 

Memorandum
Opinion delivered and filed this

the
22nd day of June, 2006.











[1]
Although appellant was
discharged soon after the probate court=s commitment order was signed, the mootness doctrine does
not apply to appeals of mental health commitments such as this.  See State v. Lodge, 608 S.W.2d 910,
912 (Tex. 1980).





[2] 
Appellant also contends the commitment order omits subsection
574.034(a)(2)(C)(ii) of the Texas Health and Safety Code, thereby proving the
probate court implicitly found insufficient evidence to meet the second prong
of the three-prong test.  See Tex. Health & Safety Code Ann. ' 574.034(a)(2)(C).  However, a review of the record indicates the
probate court did not omit subsection 574.034(a)(2)(C)(ii) from the commitment
order.  The court simply paraphrased the
subsection; the order did not include a word-for-word recitation.  Therefore, this argument is without
merit.  





[3] We note the court applies the same
standard of clear and convincing evidence in an extended mental health services
case as in a temporary mental health services case.  Tex.
Health & Safety Code Ann. ' 574.035 (Vernon Supp. 2005).