249 S.W.3d 728 (2008)
The STATE of Texas for the Best Interest and Protection of E.G.
No. 12-07-00165-CV.
Court of Appeals of Texas, Tyler.
March 19, 2008.
Daphne Session, for appellant.
Gordon K. Lemaire, for appellee.
Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

OPINION
BRIAN HOYLE, Justice.
Appellant E.G. appeals from an order authorizing the Texas Department of State Health Services (the "Department") to administer psychoactive medication-forensic. In one issue, E.G. asserts the evidence is legally and factually insufficient to support the trial court's order. We reverse and render.

BACKGROUND
On April 18, 2007, Dr. Jon Guidry signed an application for an order to administer psychoactive medication-forensic to E.G. In the application, Guidry stated that E.G. *729 was subject to an order for inpatient mental health services issued under Chapter 46B (incompetency to stand trial) of the Texas Code of Criminal Procedure. Guidry stated that E.G. had been diagnosed with schizophrenia and requested the trial court to compel E.G. to take seven psychoactive medications: an antidepressant, an anxoilytic/sedative/hypnotic, four antipsychotics, and a mood stabilizer. According to Guidry, E.G. refused to take the medications voluntarily and, in his opinion, E.G. lacked the capacity to make a decision regarding administration of psychoactive medications because he stated that he did not need the medications.
Guidry concluded that these medications are the proper course of treatment for E.G. and that, even if he were treated with the medications, his prognosis would be poor. However, Guidry believed that, if E.G. were not administered the medications, the consequences would be morbidity or injury to himself from behavior driven by his mental illness, such as snorting cocoa powder, Sweet'N Low®, and other items, if he was not searched daily to prevent hoarding. Guidry considered other medical alternatives to psychoactive medication, but determined that those alternatives would not be as effective. He believed the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and E.G.'s best interest. Guidry also considered less intrusive treatments likely to secure E.G.'s agreement to take psychoactive medication.
On April 24, the trial court held a hearing on the application. Guidry testified that he is E.G.'s treating physician and that E.G. is currently under a Chapter 46B order (incompetency to stand trial) for inpatient mental health services. Guidry stated that E.G. has verbally, or otherwise, refused to accept medication voluntarily. According to Guidry, he believes that E.G. lacks the capacity to make a decision regarding the administration of psychoactive medication. He also stated that he completed the application for an order to administer psychoactive medication-forensic and that all the statements contained in the application are true and correct. Guidry testified that the exhibit attached to the application sets forth the classifications of medication that he wishes to access and that treatment with these medications is the proper course of treatment for E.G. He stated that if these medications are used, E.G. will benefit and that these benefits outweigh the risks. Further, he stated that there are no less intrusive means of achieving the same or similar results as psychoactive medications. Guidry does not believe that E.G. will likely regain competency unless he is treated with these medications. Guidry stated that in the event E.G. is tried, these medications will assist him in making E.G. capable of assisting counsel. He believed that the underlying charge against E.G. was possession of a controlled substance, namely cocaine.
Guidry stated that E.G. first refused to take psychoactive medications on April 18, 2007 and had been at the hospital for approximately one month and ten days at that time. He discussed these medications with E.G. and stated that E.G. understood Guidry believed he needed medication to control his symptoms of schizophrenia. However, E.G. informed Guidry that he did not need, or want, medication. According to Guidry, E.G. did not express his concerns about these medications, nor did he want to talk about why he believed he did not need or want them. Guidry described the possible side effects of the requested medications. However, Guidry stated that E.G. did not express any concerns or fears about possible side effects. Further, he stated that when he attempted *730 to discuss abrupt cessation and increased risk of side effects, E.G. wanted "nothing to do with the conversation and wanted to conclude the discussion."
At the close of the evidence, the trial court granted the application. On April 24, after considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application are true and correct and supported by clear and convincing evidence. Further, the trial court found that treatment with the proposed medication is in E.G.'s best interest and that E.G. lacks the capacity to make a decision regarding administration of the medication. The trial court authorized the Department to administer to E.G. psychoactive medications, including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. This appeal followed.

SUFFICIENCY OF THE EVIDENCE
In his sole issue, E.G. argues that the evidence is legally and factually insufficient to support the trial court's order to administer psychoactive medication-forensic. More specifically, E.G. contends that the State failed to prove, by clear and convincing evidence, that he lacked the capacity to make a decision regarding administration of medication. Additionally, he argues that Guidry never testified that the proposed medications would be in his best interest.
Standard of Review
In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. Id. This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. Id.
The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. In re C.H., 89 S.W.3d 17, 25 (Tex.2002). In determining whether the fact finder has met this standard, we consider all the evidence in the record, both that in support of and contrary to the trial court's findings. Id. at 27-29. Further, we must consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. Id.
Order to Administer Psychoactive Medication
A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (Vernon Supp. 2007). The court may issue an order if it finds, by clear and convincing evidence that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication and (2) treatment with the proposed medication is in the best interest of the patient. Id. § 574.106(a-1). "Clear and convincing evidence" means the measure or degree of proof that will produce *731 in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979). "Capacity" means a patient's ability to (1) understand the nature and consequence of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.101(1) (Vernon 2003). In making its findings, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, and (6) alternatives to treatment with psychoactive medication. TEX. HEALTH & SAFETY CODE ANN. § 574.106(b) (Vernon Supp. 2007).
Analysis
In the application, Guidry stated that he believed E.G. lacked the capacity to make a decision regarding administration of psychoactive medications because he stated that he did not need the medications. He determined that if E.G. were not administered these medications, the consequences would be morbidity or injury to himself from behavior driven by his mental illness, such as snorting cocoa powder, Sweet'N Low®, and other items, if he was not searched daily to prevent hoarding. He also believed the benefits of the psychoactive medications were in E.G.'s best interest. At the hearing, Guidry stated that E.G. refused to accept medication voluntarily and that he lacked the capacity to make a decision regarding the administration of psychoactive medication. Guidry testified that the exhibit attached to the application sets forth the classifications of medications that he wished to "access" and that treatment with these medications is the proper course of treatment for E.G. Further, he stated that if these medications are used, E.G. will benefit and that these benefits outweigh the risks. Guidry does not believe that E.G. will likely regain competency unless he is treated with these medications. However, Guidry did not explain what mental illness E.G. suffered from or why he lacked the capacity to make a decision regarding administration of psychoactive medication. Guidry also did not testify that these medications were in E.G.'s best interest.
We note that nothing in the Texas Health and Safety Code regarding court ordered administration of psychoactive medication authorizes a trial court to base its findings solely on the physician's application. See TEX. HEALTH & SAFETY CODE ANN. § 574.101-.110 (Vernon 2003 & Supp. 2007). Pleadings, such as the physician's application here, are not evidence that the statutory standard has been met. See id. § 574.031(e) (Vernon 2003) (stating that the Texas Rules of Evidence apply to the hearing for court ordered mental health services unless the rules are inconsistent with the subtitle); In re E.T., 137 S.W.3d 698, 700 (Tex.App.-San Antonio 2004, no pet.); see also Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex.1995)(noting that, generally, pleadings are not competent evidence, even if sworn or verified).
Here, there was no evidence at the hearing to support a finding that the proposed medications are in E.G.'s best interest. See id. § 574.106(a-1). The only statement regarding E.G.'s best interest was in Guidry's application. We determine that a conclusory statement in the application, without any testimony from a physician at *732 the hearing, cannot produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Compare In re E.E., 224 S.W.3d 791, 794 (Tex.App.-Texarkana 2007, no pet.) (stating that the evidence required to order temporary mental health services includes expert testimony and evidence of the behavior of the proposed patient that provides the factual basis for the expert opinion.) This is the State's burden of proof. See Addington, 588 S.W.2d at 570. Further, there was no evidence at the hearing regarding E.G.'s mental illness or why Guidry believed E.G. lacked the capacity to make a decision regarding administration of psychoative medications. Again, a conclusory statement in the application, without any testimony from a physician at the hearing, cannot produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Compare In re E.E., 224 S.W.3d at 794. This is the State's burden of proof. See Addington, 588 S.W.2d at 570.
Thus, considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could not have formed a firm belief or conviction that E.G. lacked the capacity to make a decision regarding administration of the proposed medications and that treatment with the proposed medications was in his best interest. See TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1); In re J.F.C., 96 S.W.3d at 266. Consequently, the evidence is legally insufficient to support the trial court's findings based upon section 574.106 of the Texas Health and Safety Code. Having determined that the evidence is legally insufficient, it is unnecessary for us to address E.G.'s argument that the evidence is factually insufficient to support the trial court's order. See TEX. R.APP. P. 47.1. We sustain E.G.'s sole issue.

CONCLUSION
Based upon our review of the record, we conclude that the evidence is legally insufficient to support the trial court's order authorizing the administration of psychoactive medication-forensic. Therefore, we reverse the trial court's order authorizing the administration of psychoactive medication-forensic and render judgment denying the State's application for an order to administer psychoactive medication-forensic.